# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT QUINTERO,<br><br>                   Petitioner,<br><br>vs.<br><br>F. B. HAWS, Warden, et al.,<br><br>                   Respondents. | CASE NO. 07-CV-0579-H (POR)<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION, GRANTING RESPONDENTS' MOTION TO DISMISS, AND DENYING PETITIONER'S MOTIONS** |

On March 28, 2007, Robert Quintero ("Petitioner") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. Nos. 1, 2.) On July 9, 2007, Respondents filed a motion to dismiss. (Doc. No. 7.) Petitioner filed an opposition on August 1, 2007. (Doc. No. 9.) Petitioner also filed a motion for a stay, a request for appointment of counsel, and a motion for an evidentiary hearing. (Doc. Nos. 2 and 10.)

After careful consideration, the Court ADOPTS the magistrate judge's Report and Recommendation, GRANTS Respondents' motion to dismiss and DENIES Petitioner's motions.

## **Background**

On November 14, 2003, a jury convicted Petitioner of multiple counts ranging from attempted murder to harming a police animal. (Doc. No. 11 at 2.) Petitioner was

sentenced to ninety years to life.  (Doc. No. 1 at 2.)  The California Court of Appeal summarized the facts as follows:

> On January 18, 2003, at approximately 2:25 a.m., San Diego County Sheriff's Deputy Dan Settle was in his patrol car, stopped on the west side of the island. With Deputy Settle was Brenton Tracy, a participant in the Sheriff's Department's Explorer program, a program for young people interested in law enforcement careers. Deputy Settle's police dog, "Urk," was also in the patrol car. Tracy was in the front passenger seat and Urk was in a metal cage in the back of the vehicle.
>
> Deputy Settle heard three to five gunshots, which he thought were coming from an area by an apartment complex on Hacienda Drive. Deputy Settle drove to that location to investigate. As Deputy Settle approached a curve in the road, Tracy thought he saw something and Deputy Settle made a U-turn and stopped his vehicle in the road. Deputy Settle turned the car's spotlight on and got out of the car. As Deputy Settle leaned down to ask Tracy what he had seen, he saw a movement out of the corner of his eye. When Deputy Settle turned, he saw Quintero next to a blue Ford Explorer, pointing a shotgun at him. Quintero started walking toward the patrol car. Deputy Settle thought he and Tracy were going to be killed and pulled out his handgun. As he did so, Quintero fired the shotgun. Deputy Settle retreated to the back of the patrol car, firing his gun at Quintero. Quintero continued firing his shotgun at Deputy Settle and Tracy. When Quintero first opened fire, Deputy Settle used a remote control device to open the right rear door of the patrol car to let Urk out. Four shots fired by Quintero hit the windshield of the patrol car and one hit the hood. Deputy Settle thought that Quintero had shot Tracy and that he was dead.
>
> As Deputy Settle got out of the patrol car, Tracy started to get out of the car on the passenger side. When he was halfway out, he saw Quintero crouching and holding the shotgun. Tracy fell back into the car and slumped down below the dashboard. After the gunshots ended, Tracy got out of the patrol car and moved towards the back. He tripped and fell to the ground near the back of the car. Deputy Settle, who had lost sight of Quintero at that point, heard a noise and saw a figure in dark clothing. Deputy Settle, thinking Tracy was still in the car, and believing the figure was Quintero, shot at Tracy. Tracy sustained a gunshot wound to his elbow and several shrapnel wounds to his face.
>
> Deputy Settle then saw Quintero running along the sidewalk and chased him. Deputy Henry Lebitski arrived at the scene and joined in the chase, firing his rifle at Quintero. Quintero turned and ran west and north toward Highway 78. He climbed over a chain link fence and ran northbound across the freeway. When Quintero reached the center median of the freeway, he turned and fired at Deputy Settle one more time. The shot was close enough that Deputy Settle could hear it "cutting through the air." Quintero continued running to the other side of the freeway, climbed another chain link fence and ran into a field, where Deputy Settle lost sight of him. Deputy Settle returned to his patrol car to assist Tracy. Upon arriving, he found Urk lying on the ground, dead from a gunshot wound.
>
> Investigators found a bag containing 79 shotgun shells in the Explorer. They found 14 live shotgun shells in the area between Hacienda Drive and

> Highway 78. Using tracking dogs, investigators also found a pack hidden under a bush on a street just north of Highway 78, containing 57 live shotgun shells.

People v. Quintero, No. D043269, 2004 WL 3049317, at *1-3 (Cal. Ct. App. January 5, 2005). The California Court of Appeal affirmed Petitioner's conviction and sentence. (Lodgment 1.) On February 14, 2005, Petitioner petitioned for review by the California Supreme Court. (Lodgment 2.) The California Supreme Court denied his petition on March 23, 2005, "without prejudice to any relief to which defendant might be entitled after this court determines in People v. Black, S126182, and People v. Towne, S125677, the effect of Blakely v. Washington . . . ." (Id.) Petitioner did not seek a writ of certiorari from the United States Supreme Court.

On March 15, 2007, nearly two years after the California Supreme Court denied his petition for review, Petitioner filed the present petition in this Court. The petition asserts the same claims that Petitioner presented to the California Supreme Court, namely that imposing the upper term sentence violated Petitioner's Sixth Amendment rights. (Doc. Nos. 1, 2.) On April 12, 2007, Petitioner also filed a state habeas petition in California Superior Court, County of San Diego. (Doc. No. 10 at 9.)

## Discussion

Respondents argue that the Court should dismiss the petition because Petitioner did not file it within the one year statute of limitations. (Doc. No. 7.) Petitioner contends that the California Supreme Court's denial of his petition for review did not constitute a final judgment because the Court denied the petition without prejudice to any relief he was entitled to after that Court resolved two pending cases. (Doc. No. 2.) Petitioner also asserts that he is entitled to a later statute of limitations start date under 28 U.S.C. §§ 2244(d)(1)(B), (C), and that equitable tolling should apply. (Doc. No. 9.)

**A.    28 U.S.C. § 2244(d)(1)(A)**

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs this action. Arredondo v. Ortiz, 365 F.3d 778, 781 (9th Cir. 2004). AEDPA imposes a one year statute of limitations on federal habeas petitions brought pursuant to 28 U.S.C. § 2254.

Under AEDPA, the one year limitation period begins to run from the latest of the following:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). "The 1-year limitation period of § 2244(d)(1) quite plainly serves the well-recognized interest in the finality of state court judgments." Duncan v. Walker, 533 U.S. 167, 179 (2001).

Under § 2244(d)(1)(A), if a petitioner does not seek certiorari from the United States Supreme Court, direct review ends and the prisoner's conviction becomes final ninety-days after the California Supreme Court denied review. Wixom v. Washington, 264 F.3d 894, 897 (9th Cir. 2001); Bowen v. Roe, 188 F.3d 1157, 1158-59 (9th Cir. 1999). The AEDPA one year limitation period begins to run one day after the conviction becomes final. Corjasso v. Ayers, 278 F.3d 874, 877 (9th Cir. 2002).

Here, the Court concludes that the one year limitations period began on June 22, 2005, ninety-one days after the California Supreme Court denied the petition for direct review. Despite Petitioner's arguments to the contrary, the California Supreme Court rendered a final judgment that denied his petition. The California Supreme Court's "without prejudice" language did not extend or otherwise affect the date on which direct review of petitioner's conviction became final for purposes of 28 U.S.C. §2244(d)(1)(A). See Hemmerle v. Schriro, 495 F.3d 1069, 1074 (9th Cir. 2007); Wixom, 264 F.3d at 897; see also Clay v. United States, 537 U.S. 522, 531 (2003) ("The words 'by the conclusion of direct review or the expiration of the time for

1  seeking such review' make it clear that finality for the purpose of § 2244(d)(1)(A) is to
2  be determined by reference to a uniform federal rule").  Thus, absent a more clear
3  indication from the California Supreme Court that it intended to toll Petitioner's
4  AEDPA statute of limitations, the Court concludes that the petition's denial constituted
5  a final action.  Following this judgment, Petitioner did not seek review by the United
6  States Supreme Court.  Petitioner's conviction therefore became final on June 21, 2005,
7  at the expiration of the ninety day certiorari period, and the statute of limitations began
8  on June 22, 2005.  See Wixom, 264 F.3d at 897; Corjasso 278 F.3d at 877.  Because
9  Petitioner filed this petition on March 28, 2007, nearly two years later, the Court
10 concludes that the petition is barred by the statute of limitations.

**B.     28 U.S.C. § 2244(d)(1)(B)**

Petitioner asserts that prison officials and policies prevented him from filing a timely habeas petition.  (Doc. No. 2.)   A petitioner is entitled to a later statute of limitations start date if an unconstitutional or unlawful state action prevented the filing of a timely petition.  28 U.S.C. § 2244(d)(1)(B).  However, "the petitioner must show a causal connection between the unlawful impediment and his failure to file a timely habeas petition."  Bryant v. Schriro, 499 F.3d 1056, 1060 (9th Cir. 2007); see also Lewis v. Casey, 518 U.S. 343, 351 (1996) (inmate must prove a relevant actual injury when arguing that a prison law library's inadequacies prevented him from pursuing a legal claim).

Petitioner alleges that prison policies, lockdowns, and his job demands restricted his access to the law library.  However, Petitioner does not allege with any specificity how either prison policies, which gave priority access to inmates with approved court deadlines, or lockdowns constituted unconstitutional or unlawful state action under §2244(d)(1)(B).  See Lewis, 518 U.S. at 361 ("principle of deference has special force" regarding prisoners in lockdown); Turner v. Safley, 482 U.S. 78, 89 (1987) (prison regulation "is valid if it is reasonably related to legitimate penological interests"); Lindquist v. Idaho State Bd. of Corrs., 776 F.2d 851, 858 (9th Cir. 1985) ("[p]rison

1  officials of necessity must regulate the time, manner, and place in which library
2  facilities are used"). Petitioner's exhibits also fail to demonstrate a causal connection
3  between prison officials' alleged wrongful actions and his inability to file a timely
4  habeas petition. While Petitioner provided twenty-six Program Status Reports
5  describing lockdowns and periods of limited library access, See Pet'r Mot. Evid. Hr'g
6  at 29-54, the reports show that the law library was always open, even if at times only
7  Preferred Legal Users had access. While Petitioner provides a list of Preferred Legal
8  Users on March 8, 2007, id. at 27, he does not explain why the list omitted him or what
9  access he had without preferred status. Additionally, Petitioner's allegation that his
10 work schedule prevented him from filing a timely habeas petition does not allege an
11 unlawful state action or establish the required causal connection. Petitioner provided
12 his work schedule for only one month in 2005 and one month in 2007, id. at 20-21, and
13 he does not explain how his work schedule interfered with his ability to file a timely
14 petition. Therefore, the Court concludes that Petitioner fails to demonstrate that he is
15 entitled to a later statute of limitations start date under § 2244(d)(1)(B).

16 **C.    28 U.S.C. § 2244(d)(1)(C)**

17 Petitioner asserts that the United States Supreme Court's decision in Blakely v.
18 Washington, 542 U.S. 296 (2004), justifies a later start date under § 2244(d)(1)(C).
19 Under § 2244(d)(1)(C), a petitioner is entitled to a later statute of limitations start date
20 beginning on "the date on which the constitutional right asserted was initially
21 recognized by the Supreme Court, if the right has been newly recognized by the
22 Supreme Court and made retroactively applicable to cases on collateral review." 28
23 U.S.C. § 2244(d)(1)(C).

24 The Court concludes that § 2244(d)(1)(C) does not justify a later start date here.
25 The Supreme Court decided Blakely on June 24, 2004, well before Petitioner's
26 conviction became final on June 21, 2005. See Schardt v. Payne, 414 F.3d 1025, 1033
27 (9th Cir. 2005) (if "case[s] were still pending on direct appeal when Blakely was
28 decided, we should be compelled to hold that Blakely was applicable"). Accordingly,

Blakely did not create a newly recognized right for Petitioner. The Supreme Court's decision in Cunningham v. California, 127 S.Ct. 856, 871 (2007), also does not provide a later statute of limitations start date for Petitioner because Cunningham does not apply retroactively. See Schardt, 414 F.3d at 1027; see also Teague v. Lane, 489 U.S. 288, 310 (1989) ("new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced"). Therefore, Petitioner is not entitled to a later statute of limitations start date under § 2244(d)(1)(C).

### D.     Equitable Tolling

Petitioner argues equitable tolling should apply because prison officials' enforcement of prison policies constituted extraordinary circumstances that prevented him from filing his habeas petition. Equitable tolling will apply if a petitioner demonstrates: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." Raspberry v. Garcia, 448 F.3d 1150, 1153 (9th Cir. 2006) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). Petitioner bears the burden of showing that equitable tolling applies. Miranda v. Castro, 292 F.3d 1063, 1065 (9th Cir. 2002).

The Court concludes that Petitioner has not established that he diligently pursued his rights during the one year statute of limitations. Petitioner provides no evidence that he tried to access the law library during the one year statute of limitations, or that prison officials wrongfully kept him from pursuing his legal claims. Petitioner's exhibits do not offer a single instance where he attempted to enter the law library but was denied access. Petitioner's filing of a state habeas petition also does not demonstrate diligence because he filed that petition on April 12, 2007, almost one year after the AEDPA statute of limitations expired.

Even if the Court accepted Petitioner's claim that he pursued his rights diligently, on these facts he cannot establish that extraordinary circumstances prevented him from filing a timely federal habeas petition. The Ninth Circuit requires that a petitioner show

"extraordinary circumstances beyond a prisoner's control that makes it impossible to file a petition on time." Stillman v. LaMarque, 319 F.3d 1199, 1202 (9th Cir. 2003); see Redd v. McGrath, 343 F.3d 1077, 1084-85 (9th Cir. 2003) (if the petitioner can show that "the wrongful conduct of government officials, made it impossible for him to file his petition on time, he may be entitled to equitable tolling.") Petitioner must also show that extraordinary circumstances proximately caused his untimeliness. Allen v. Lewis, 255 F.3d 798, 800 (9th Cir. 2001). Petitioner fails to demonstrate with any specificity a connection between the alleged denial of access and his untimely petition. His bare assertions that restricted access to the law library, job demands, and lockdowns amounted to a denial of court access are insufficient to establish the applicability of equitable tolling.

**E.      Merits of Petition**

Although the Court concludes the petition must be dismissed as untimely, the Court notes that the petition on its face fails to allege a cognizable Sixth Amendment claim. Petitioner alleges that the trial court's sentence violated his Sixth Amendment rights because it relied on recidivism-related facts other than a prior conviction in imposing the upper term sentence. However, as Petitioner concedes, the trial court cited at least two legally sufficient aggravating factors justifying the imposition of the upper term sentence: Petitioner's probationary status and the increasing seriousness of his prior convictions. (Doc. No. 1 at 10.) The "imposition of the upper term does not infringe upon the defendant's constitutional right to jury trial so long as one legally sufficient aggravating circumstance has been found to exist by the jury, has been admitted by the defendant, or is justified based upon the defendant's record of prior convictions." People v. Black, 41 Cal.4th 799, 813 (2007). Moreover, the California Supreme Court has concluded "that neither Cunningham nor the relevant prior high court decisions apply to the imposition of consecutive terms." Id. Therefore, the Court concludes that Petitioner fails to establish that imposing the upper term sentence violated his Sixth Amendment rights.

### F.  Motion for a Stay, Request for Appointment of Counsel, and Motion for an Evidentiary Hearing

Petitioner has filed a motion for a stay, asking that the Court hold this petition in abeyance until he exhausts the issues raised in his pending state habeas petition.  The Court concludes that the stay procedure is unavailable because the AEDPA statute of limitations bars Petitioner's federal habeas petition.  Accordingly, the Court denies Petitioner's motion.  The Court also denies Petitioner's motion for an evidentiary hearing.

Finally, the Court denies Petitioner's request for appointment of counsel.  In the Ninth Circuit, "[i]ndigent state prisoners applying for habeas relief are not entitled to appointed counsel unless the circumstances of a particular case indicate that appointed counsel is necessary to prevent due process violations."  Chaney v. Lewis, 801 F.2d 1191, 1196 (9th Cir. 1986).  A due process violation may occur in the absence of counsel if the issues are too complex for the petitioner.  See Bonin v. Vasquez, 999 F.2d 425, 428-29 (9th Cir. 1993).  Here, Petitioner has sufficiently represented himself to date.  The Court concludes that the interests of justice do not require the appointment of counsel.

### Conclusion

After careful consideration, the Court ADOPTS the magistrate judge's Report and Recommendation, GRANTS Respondents' motion to dismiss and DENIES Petitioner's motions.

IT IS SO ORDERED.

DATED:  February 28, 2008

                                      MARILYN L. HUFF, District Judge
                                      UNITED STATES DISTRICT COURT

COPIES TO:
All parties of record.